(173 App. Div. 275)

SALZANO v. MARINE INS. CO., Limited.

(Supreme Court, Appellate Division, Fourth Department. April 19, 1916.)

1. INSURANCE ⬅96—BROKER—AGENCY FOR APPLICANT—STATUTES—"AGENT."
    In action for loss upon foreign fire insurance policy, the defense being that policy was issued on false representations by plaintiff, *held*, plaintiff was bound by his representations as made to defendant in application prepared by the broker who solicited the insurance, since such broker was in that respect the agent of plaintiff, notwithstanding Insurance Law (Consol. Laws, c. 28) § 49, providing that the term "agent" in that chapter shall include "any person who shall in any manner aid in transacting the insurance business of any insurance corporation not incorporated by the laws of this state and any broker whose business is to negotiate for and place risks."
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 126; Dec. Dig. ⬅96.
    For other definitions, see Words and Phrases, First and Second Series, Agent.]

2. INSURANCE ⬅378(2)—ESTOPPEL—KNOWLEDGE OF AGENT—WHO IS AGENT.
    Knowledge or notice of the falsity of such representations received by such broker in the course of soliciting plaintiff to insure, preparing plaintiff's application, or negotiating for the policy is not to be imputed to defendant.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 971, 973, 974, 977–997; Dec. Dig. ⬅378(2).]

Appeal from Trial Term, Erie County.

Action by Rose Salzano against the Marine Insurance Company. From a judgment for plaintiff, and from an order denying new trial on the court's minutes, defendant appeals. Reversed, and new trial ordered.

See, also, 165 App. Div. 949, 150 N. Y. Supp. 1111.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Frank Gibbons and Gibbons & Pottle, all of Buffalo, for appellant.
Charles W. Sickmon and Armstrong & Jackson, all of Buffalo, for respondent.

---

FOOTE, J. Plaintiff has recovered upon a policy of insurance for damage to her automobile by fire. The policy contained a clause making it void "if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof." One of the defenses was the alleged misrepresentations of plaintiff's agent as to the year of manufacture and the cost of the car to plaintiff. A Mr. Kennedy was an insurance broker in Buffalo. He had in his employ as a solicitor one Mooney, who solicited plaintiff, through her agent, to insure her automobile. Defendant is a foreign insurance company, with its head office in London, England. Chubb & Son, of New York City, are its general agents in this country, and a Mr. Walsh is its local agent in Buffalo. Mooney obtained from plaintiff, through her agent, a written application to defendant company for a policy of $1,500. It was stated in the application that the car was made in 1908 and cost plaintiff $2,300. Both of these statements were false. The car was made in 1907 and put into use in June of that year, and it was bought by plaintiff as a secondhand car for $850. She expended some money for repairs, but the total cost to her, including repairs, was less than the sum stated by several hundred dollars.

There have been two trials of the case. On the first trial the jury were instructed that Kennedy and Mooney were brokers, and were plaintiff's agents, and that plaintiff was bound by the statements contained in the written application which Mooney wrote from information given him by plaintiff's agent, but it was left to the jury to say whether the facts so falsely stated in the application were material to the risk. The jury found for the plaintiff that they were not, and this court sustained defendant's exceptions and directed a new trial, holding that the policy was procured through misrepresentations of plaintiff's agent as to the material facts as to the cost of the car to plaintiff and the year of its manufacture. Salzano v. Marine Ins. Co., 165 App. Div. 949, 150 N. Y. Supp. 1111. On the second trial, now under review, the jury were instructed in effect that the statements in the written application as to the cost of the car to plaintiff and the year of its manufacture were in fact false and material; that if these facts were so stated to Mooney by plaintiff's agent at the time Mooney wrote them in the application, plaintiff could not recover; that Mooney and his employer, Kennedy, the broker, were defendant's agents, and not agents of plaintiff, and if plaintiff's agent stated to Mooney correctly the cost of the car to plaintiff and the year of its manufacture, and if Mooney was responsible for writing these facts in the application incorrectly, then plaintiff was not responsible for that and could recover.

It is said that the learned judge who presided at both trials was led to hold upon the last trial that Kennedy and Mooney were defendant's agents, contrary to his ruling upon the first trial, because section 49 of the Insurance Law required him to so hold. This section (chapter 33, Laws 1909, being chapter 28 of the Consolidated Laws) is as follows:

"Sec. 49. Every agent of any insurance corporation doing business in this state shall, in all advertisements of such agency, publish the location of the

corporation, giving the name of the city, town or village in which it has its principal business office, and the state or government under the laws of which it is organized. The term 'agent' in this chapter shall include an acknowledged agent or surveyor or any other person who shall in any manner aid in transacting the insurance business of any insurance corporation not incorporated by the laws of this state, and any broker whose business, in whole or in part, is to negotiate for and place risks, deliver the policies covering the same and collect premiums therefor."

[1, 2] The question is whether Kennedy and Mooney, acting as brokers for plaintiff to place her insurance, became, by force of this section, agents for the defendant company, so that it became chargeable as matter of law with the knowledge or notice which they may have had, but which they did not communicate to defendant. I do not think such was the legislative intent, or that the language used imports such a meaning. The purpose of the statutory definition of the term "agent," contained in this section, appears to be, not to establish the relation of principal and agent as between a foreign insurance company and a person who seeks to place with it insurance as broker for the insured, but rather to regulate and control the business of foreign insurance companies in this state. The language employed for that purpose is:

"The term 'agent' in this chapter shall include * * * any broker whose business," etc.

There are many provisions in "this chapter" (the Insurance Law) which prohibit agents of foreign insurance companies from placing risks in this state until the laws here regulating such business have been complied with, and the intent is that these provisions shall apply equally to brokers and prohibit them from placing insurance where duly constituted agents would be prohibited from so doing. Some of the sections in which the term "agent" appears, and which, by force of section 49, must be held to include "broker," are as follows:

By section 38, every agent who receives or collects any money as such is made responsible therefor in a fiduciary capacity. By section 50, no person shall act as agent for any foreign insurance company, or negotiate for risks, unless such company has complied with the provisions of the Insurance Law, and, if he does, is subject to a penalty. By section 134, agents for foreign insurance companies are prohibited from writing policies in any city or village until they have given to the treasurer of such city or village a bond for the benefit of its fire department, conditioned to pay to such treasurer 2 per cent. of the premiums received as required by section 133. By section 137, the superintendent of insurance is authorized to license a limited number of agents to write under certain circumstances policies for companies not admitted to do business in this state. By section 142, agents are prohibited from acting as such without procuring a certificate of authority from the superintendent of insurance; and section 143 prohibits "brokers" from soliciting or procuring applications for insurance without procuring a like certificate of authority, and also defines the term "broker," as used in this section, to include any person who acts or aids in any manner on behalf of the insured in negotiating contracts of insurance, etc., for a consideration.

The terms of the statute as embodied in section 49 are, I think, given their full effect and meaning when the term "agent," appearing in the other sections above referred to, and perhaps in some others, is held to include "any broker whose business, in whole or in part, is

to negotiate for and place risks, deliver the policies covering the same, and collect premiums therefor." By this construction foreign insurance companies which have not complied with our laws so as to be entitled to write insurance upon property in this state are prevented from evading the law by availing themselves of the services of brokers not commissioned as their agents to place policies in this state. The history of section 49 seems to support this construction. Its origin is found in part in section 7 of chapter 308 of the Laws of 1849, entitled "An act to provide for the incorporation of insurance companies." Section 7 contains provisions respecting companies incorporated in other states which seek to do business in this state, and among other things prohibits agents of such foreign insurance companies from doing business here without procuring a certificate of authority from the comptroller of this state after complying with certain requirements, and imposes a penalty upon such agents for its violation. The last sentence of the section is:

"The term 'agent or agents' used in this section shall include an acknowledged agent or surveyor, or any other person or persons who shall in any manner aid in transacting the insurance business of any insurance company not incorporated by the laws of this state."

Chapter 466 of the Laws of 1853, entitled "An act to provide for the incorporation of fire insurance companies," contains in section 23 further provisions in reference to agents of foreign insurance companies seeking to write fire insurance in this state. This section closes with the same sentence above quoted from section 7 of the act of 1849, and contains also the following sentence, not found in that act:

"Every agent of any fire insurance company shall, in all advertisements of such agency, publish the location of the company, giving the name of the city, town or village in which the company is located, and the state or government under the laws of which it is organized."

As all the other provisions of this section apply expressly to foreign insurance companies, it is assumed that this clause was likewise so intended. By chapter 555 of the Laws of 1875 the above-mentioned section 23 of the act of 1853 was amended in several particulars. The two clauses above quoted from the act of 1853 remained unchanged, but there was added this provision:

"Whenever, by the provisions of this section, it shall be unlawful for any fire insurance company, association, or partnership, herein specified, to take risks, or transact the business of fire insurances within this state, through agents, or otherwise, it shall be likewise unlawful for any broker or brokers, or other persons acting for persons, firms or corporations, in this state or elsewhere, to negotiate for or place risks in any such insurance company, or in any way or manner, aid such persons, firms or corporations in effecting such unauthorized insurances. * * * And the term 'broker' or 'brokers,' also used in this section, is hereby declared to include all persons and firms whose business, in whole or in part, it is to negotiate for and place risks, deliver the policies covering the same, and collect the premiums therefor."

There was also added at the end of the section a clause to the effect that the section applied only to foreign insurance companies. In the revision of the Insurance Law by chapter 690 of the Laws of 1892, these quoted provisions from prior statutes were revised and

brought into one section, numbered 49, in the form in which that section still remains. By section 292 of that act it is provided that:

"The provisions of this chapter so far as they are substantially the same as those of laws existing on September 30, 1892, shall be construed as a continuation of such laws, modified or amended, according to the language employed in this chapter and not as new enactments."

All the provisions of section 49 as now in force are found in the above-mentioned section 23 as amended by chapter 555 of the Laws of 1875. In the revision of 1892 these provisions were consolidated into their present form, not, as I think, with intent to change their substance or meaning, but for the sake of brevity. There is nothing in said section 23, so consolidated and abbreviated, which purports to make brokers, "whose business in whole or in part it is to negotiate for and place risks, deliver the policies covering the same and collect the premiums therefor," agents of the insurance companies in which the risks are placed, even in the matter of delivering the policies and collecting the premiums.

In view of the history of this statute, I think the phrase, "and any broker whose business, in whole or in part, is to negotiate for and place risks," does not refer to such negotiations in behalf of the company, but in behalf of the applicant for insurance whom the broker represents, and so, in any event, does not make the broker an agent for the company in such negotiations, even if he becomes the agent of the company to deliver the policies and collect the premiums. Under such a construction, the company would not be chargeable with information which the broker received during negotiations, but only with such as he acquired in delivering the policy and collecting the premium. In negotiating for a policy in behalf of a person desiring insurance, the broker is the agent of that person, and not of the insurer. He cannot in that matter be the agent of both, as their interests conflict. Northrup v. Piza, 43 App. Div. 284, 60 N. Y. Supp. 363, affirmed 167 N. Y. 578, 60 N. E. 1117; Wilber v. Williamsburgh, etc., Co., 122 N. Y. 439, 25 N. E. 926; Wisotzkey v. Hartford Co., 112 App. Div. 596, 98 N. Y. Supp. 763 (opinion by Spring, J.: dissenting opinion by McLennan, P. J.); Allen v. German Am. Ins. Co., 123 N. Y. 6, 25 N. E. 309; Empire State Insurance Co. v. American Central Ins. Co., 138 N. Y. 446, 34 N. E. 200; Shepard v. Davis, 42 App. Div. 462, 59 N. Y. Supp. 456. He owes a duty to his employer to act in his interest, and not in the interest of the company. It would, I think, be a breach of his duty to his employer to disclose to the company any information he may have received from his employer which it would be against the interest of his employer to have disclosed. Moreover, the policy contains this clause:

"22. No person shall be deemed an agent of this company, unless such person is authorized in writing as such agent of this company."

This clause differs but slightly from the similar clause of the standard form of fire policy in this state, which is as follows:

"In any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company."

As the standard policy containing this clause is the creature of statute, effect must be given to it in construing section 49. It was not claimed at the trial that defendant had failed to comply with any of the provisions of our statute necessary to authorize it to insure property in this state, or that Kennedy was not duly licensed under the Insurance Law to carry on his business as an insurance broker. The following authorities tend to support the above construction of section 49: Romberg v. Kouther, 27 Misc. Rep. 227, 57 N. Y. Supp. 729; United Firemen's Ins. Co. v. Thomas, 92 Fed. 127, 34 C. C. A. 240, 47 L. R. A. 450; Wood v. Firemen's Fire Ins. Co., 126 Mass. 316. In Michigan and Wisconsin statutes somewhat similar in form have been held as intended to make brokers in those states who place policies in foreign insurance companies agents, in fact, for those companies with all the legal consequences of an actual agency. Pollock v. German Fire Ins. Co., 127 Mich. 460, 86 N. W. 1017; Bliss v. Potomac Fire Ins. Co., 134 Mich. 212, 95 N. W. 1083; Welch v. Fire Ass'n, 120 Wis. 456, 98 N. W. 227. The statutes in those states differ somewhat from our own, but in so far as they are alike I think they should not be followed in the construction of our statute in view of its history as before stated.

There was proof of relations of a more or less intimate character between Kennedy, the broker, and Walsh, the local agent of the defendant. They occupied adjoining offices. Plaintiff did not ask to have left to the jury any question as to whether these relations were such as to constitute Kennedy and his assistant, Mooney, agents in fact for defendant under Walsh or his clerks, and so authorized to act for defendant within the doctrine of Arff v. Star Fire Ins. Co., 125 N. Y. 57, 25 N. E. 1073, 10 L. R. A. 609, 21 Am. St. Rep. 721. We have, therefore, no occasion here to consider that question.

We think the trial court erred in instructing the jury, as matter of law, that Kennedy and Mooney were agents of defendant. If they were in fact brokers in the transaction, and not authorized to represent and act for defendant, then they did not become defendant's agents by virtue of section 49 of the Insurance Law, and any knowledge or notice received by them from plaintiff in the course of soliciting plaintiff to take out insurance, preparing her application, and negotiating for the policy is not to be imputed to defendant.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.