## CHRYSLER SALES CORPORATION v. SMITH, Insurance Commissioner of Wisconsin.

(District Court, W. D. Wisconsin. November 18, 1925.)

1. **Insurance ☞2—In legal concept, insurance does not attach to property, but to persons.**

Insurance, in legal concept, in absence of special circumstances, does not attach to property, but to persons.

2. **Insurance ☞16, 20—Automobile insurance arranged by sales corporation held "doing business" in state where car sold; company insuring automobiles sold held required to obtain license.**

Where automobile sales corporation arranged with company not licensed to do business in Wisconsin for fire and theft insurance on all cars sold in that state, which was to become effective on sale by retail dealer at a price which was the same, whether insurance was desired or not, and to run for term of one year from date of retail sale in favor of beneficiaries, determined by the sale, held, insurance was consummated in Wisconsin, and insurer was "doing business" in that state, within St. Wis. 1925, § 201.41 (1), and required to obtain license or be liable for penalties, under sections 201.44 (1) and (5), 209.04 (1) and (4), and 348.488.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

3. **Insurance ☞20—Retail automobile dealers held insurance "agents" under Wisconsin statute.**

Where automobile sales corporation arranged for fire and theft insurance on cars, to be effective on retail sale at price which included premium, and which in effect fixed term of insurance and determined beneficiaries, held, retail dealers were "agents" of insurance company, within St. Wis. 1925, § 209.04 (1) and

(1), requiring agent to hold certificate of authority.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Agent.]

In Equity. Suit for injunction by the Chrysler Sales Corporation against W. Stanley Smith, Commissioner of Insurance of the State of Wisconsin. Preliminary injunction denied.

H. M. Wilkie, of Madison, Wis. (Nicholas Kelley and Duane R. Dills, both of New York City, and E. G. Ince, of Chicago, Ill., of counsel), for plaintiff.

Herman L. Ekern, Atty. Gen., of Wisconsin (T. L. McIntosh, of Madison, Wis., and Walter H. Bennett, of New York City, of counsel), for defendant.

Before EVANS, Circuit Judge, and GEIGER and LUSE, District Judges.

LUSE, District Judge. Complainant, a Michigan corporation, seeks to enjoin defendant from publicly asserting that insurance issued by the Palmetto Fire Insurance Company, a corporation of South Carolina, to Wisconsin residents owning Chrysler automobiles sold in Wisconsin, is so issued contrary to the laws of Wisconsin, and from threatening to prosecute Wisconsin dealers in Chrysler cars for violating Wisconsin statutes regulating the insurance business within the state, to the irreparable damage to plaintiff's business in the sale of Chrysler cars in Wisconsin. Complainant avers that the Wisconsin statutes, properly construed, do not apply to the situation, and, if they do, they are unconstitutional upon various grounds, and particularly under the due process clause of the Fourteenth Amendment. The application was heard on the pleadings, supplemented by affidavits.

Prominent among the state statutes which merit consideration are the following:

Section 201.41 (1), Wis. St.:

"No insurance corporation shall transact any insurance business in this state without first having paid the license fees and obtained the license therefor as required by law."

By subdivision 2 of that section, each such company is required to file a statement that it desires and will accept a license within the state, revocable in case of violation of law or certain impairment of its capital, and appoint the commissioner of insurance its attorney in fact for service of process. The section also requires the insurer to file a copy of its charter and evidence that it has a certain capital, and has deposited, either in this state, or where domestic, a certain amount in approved securities.

Section 201.44:

"(1) No policy of insurance shall be issued or delivered in this state by any company, except through an agent who shall be a resident of this state and hold a certificate of authority under section 209.04, for the kind of insurance effected by such policy. * * *

"(5) Any company or person soliciting or placing insurance without complying with this section shall, in addition to other penalties provided by law, be liable personally upon such policy or contract of insurance to the same extent as the company issuing the same."

A penalty is provided for violation of this section.

Section 209.04:

"(1) No person, officer, or broker, agent or subagent of any insurance corporation of any kind required to pay any tax or license fee to the state shall act or aid in any manner in transacting the business of or with such corporation in placing risks or in collecting any premiums or assessments or effecting insurance therein, without first procuring from the insurance corporation a certificate of authority; nor shall any such person, officer, broker, agent, or subagent, after such certificate shall have expired, or after revocation by the commissioner of insurance of such certificate or of the license of such corporation and until a new certificate or license shall have been issued to him, do or perform any such act for or in behalf of any insurance corporation. The exceptions herein shall not apply to mutual insurance corporations or fraternal benefit societies not maintaining a lodge system which corporations or societies issue only policies of health or accident insurance or both. * * *

"(4) Any person violating the provisions of this section shall be punished by a fine of not more than five hundred dollars for each offense. Any company violating subsection (2) of this section shall pay five times the amount of fees upon each license included in such violation."

Section 209.05:

"Every person or member of a firm or corporation who solicits insurance on behalf of any insurance corporation or person desiring insurance of any kind, or transmits an application for a policy of insurance, other than for himself, to or from any such corporation, or who makes any contract for insurance, or collects any premium for insurance,

or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance corporation, or advertises to do any such thing, shall be held to be an agent of such corporation to all intents and purposes, unless it can be shown that he received no compensation for such services. This section shall not apply to agents of licensed fraternal beneficiary societies, or mutual fire insurance companies of this state except those organized under sections 201.02, 201.04 and 201.16."

Section 348.488:

"Any unauthorized insurance company or other unauthorized insurer which shall hereafter take or receive any application for insurance in this state, or shall receive or collect a premium on any part thereof for such insurance, shall be punished by a fine of not more than five thousand dollars. Any officer, agent, solicitor or broker, or other employé of any unauthorized insurance company or other unauthorized insurer who shall take or receive any application for insurance in this state, or shall receive or collect a premium or any part thereof for such insurance, shall be guilty of a felony, and shall be punished by a fine of not more than five hundred dollars, or imprisonment in the state penitentiary for one year, or by both such fine and imprisonment."

By virtue of these provisions of the Wisconsin law, among others, defendant claims that the Palmetto Fire Insurance Company and the Wisconsin dealers in Chrysler cars are violating the laws of Wisconsin and are amenable thereto as he has claimed. The facts disclosed by the record or reasonably inferable therefrom are as follows:

Complainant is a Michigan corporation, engaged in buying all of the automobiles manufactured by the Chrysler Motor Corporation and selling them at wholesale throughout the United States to distributors and dealers, of whom there are some 3,000 in the country and 130 in the state of Wisconsin. It has established this sales organization at great expense, and its success depends in part on its ability to retain these distributors and dealers for the continuance of sales, which during the first half of 1925 exceeded $500,000 in the state of Wisconsin. It appears that a large percentage of automobiles sold at retail in this country are sold on the deferred payment plan; the deferred payments being evidenced by promissory notes, secured by lien on the car sold, and usually assigned by the dealer to some bank or finance company which requires that insurance against fire and theft be taken out for the protection of the owner and itself from loss through those hazards. The result, so complainant alleges, has been that such banks or finance companies have been required to maintain organizations to collect deferred payments, watch the cars against improper disposition before final payment, etc., with the further result that the cost of financing, which is invariably borne by the retail purchaser, is not uniform, usually high, and often excessive. One element making for uniformity and cheapness in financing is cheap insurance, and to secure that, for the benefit of the retail purchasers, complainant, on June 16, 1925, entered into a contract, called in the bill an "open policy," with the Palmetto Fire Insurance Company, a South Carolina corporation, not admitted to do business in Wisconsin, and the Commercial Credit Company, a Delaware corporation, the legal effect of which, together with an interpretation of the acts of the Wisconsin dealers thereunder, present the main questions in controversy. A new contract was entered into between the parties on August 4, 1925, the day after this suit was commenced, modifying and clarifying to some extent the contract of June 16, but making no substantial change in the nature of the questions presented.

The purpose of the contract of June 16 is stated therein as follows:

"Chrysler desires to increase the retail sale of Chrysler cars, and to obtain for dealers a uniform maximum rate for financing retail sales, and to provide insurance at a uniform maximum rate throughout the entire United States for the benefit of purchaser and/or other parties mentioned in the policy and certificates, as their respective interests may appear on each Chrysler car purchased at retail. Chrysler proposes to advertise throughout the United States the benefits resulting to purchasers from insurance under policy and certificates issued thereunder. Commercial Credit desires to obtain, so far as possible, the financing of the retail sales of Chrysler cars. Insurer desires to obtain insurance in respect to all Chrysler cars sold and leased and delivered at retail to purchasers by dealers throughout the United States during the term of this policy."

By the terms of the contract Palmetto Fire Insurance Company insures "Chrysler Sales Corporation and/or for account of whom it may concern, as specified, against loss by fire or theft to the automobiles described, for a period commencing at noon July 1, 1925, and ending at noon July 1, 1926,

but all certificates issued thereunder remain "in full force and effect for the term specified in such certificates." The amount of premium is not stated, except "as specified," evidently referring to an undisclosed collateral agreement. Usual warranties as to the occupation or business of the assured, the uses to which the automobile will be put, and the place where same is kept, are waived by the insurer. The existence of any lien or mortgage does not vitiate the insurance. Liability of the insurer is limited to the actual cash value of the property at the time of any loss or damage, which loss or damage is to be ascertained or estimated with proper deduction for depreciation, the usual provision with regard to proof of loss within 60 days is present, and likewise a provision for appraisal of the amount of loss or damage in case the assured and the insurer shall fail to agree thereon. Coverage is for 100 per cent. of the list price of each Chrysler car, f. o. b. Detroit, on date of purchase at retail, limited, however, as already indicated, to the actual cash value at the time of loss. Coverage under the contract and under certificates to be issued is provided to be "automatically effective from the date on which (during the term of this policy) each purchaser takes delivery of a Chrysler car or receives a bill of sale of a Chrysler car, whichever shall be the earlier, and shall attend in respect to such Chrysler car for a period of twelve months."

The purchaser is defined as one purchasing or agreeing to purchase Chrysler cars at retail. No car is insured which on July 1, 1925, was in the possession of or in transit to any dealer or distributor, unless reported by Chrysler Sales Corporation to the insurer. The insurer is required to issue certificates to any purchaser at retail in the form attached to the policy, and the insurance evidenced by the contract and certificate is not subject to cancellation by either party. If the automobiles are financed—that is, sold on deferred payments secured by lien upon the car—a duplicate of such certificate is furnished to the finance companies financing the purchase. It is agreed, however, that all cars shall be automatically covered as provided in the contract, notwithstanding the failure or omission to apply for or issue a certificate or the failure to report to the insurer any car as required by the policy. In cases where the purchaser takes out other insurance upon his car, and the Palmetto Fire Insurance Company disclaims liability on that account, coverage under the contract is provided to operate as excess insurance, not to apply to any loss until recovery from such other insurance shall have been exhausted.

The Chrysler Company is obliged to send original detailed reports to Commercial Credit Corporation, and a duplicate thereof to the insurer of Chrysler cars in the possession of or in transit to its distributors and/or dealers and unsold on July 1, 1925, upon which insurance is desired under the contract. It is also required to send each month, on or before the 15th day, reports to the same parties of the cars shipped to its dealers and distributors throughout the United States during the preceding calendar month.

The agreed premiums are to be paid by Chrysler Sales Corporation for the insurance provided for, and are paid by the Chrysler Corporation to the Commercial Credit Corporation, or any insurance broker designated by the latter, on or before the 15th day of each month, for all Chrysler cars reported by the distributors and dealers of the Chrysler Sales Corporation as sold and/or leased during the preceding month, and which are insured, and a report of such cars in detail is required to accompany such remittance. Commercial Credit Corporation is required to remit, or cause the insurance brokers designated by it to remit, the insurance premiums on or before the 25th day of each month to the agents of the Palmetto Fire Insurance Company at Baltimore, Md. Commercial Credit Corporation guarantees the payment of such premiums. Payment of all losses claimed are to be made "to purchaser, unless the purchase of any Chrysler car has been financed, in which case payment of all losses shall be made to Commercial Credit, affiliated companies, or other finance companies or dealers (meaning all who have advanced deferred payments on behalf of the purchaser and taken security therefor) financing the same for the account of all parties, as their respective interests may appear."

The form of certificate attached to the contract recites in effect that, pursuant to the contract between the Chrysler Sales Corporation and the Palmetto Fire Insurance Company, the new Chrysler car sold and delivered to the purchaser, whose address is given and which car is specifically described, is insured against loss or damage from the perils insured against for a period of one year, with specific dates, for a sum stated, being the list price of the car including standard factory equipment, f. o. b. Detroit. The certificate asserts that the interests of the Chrysler Sales Corporation and/or of purchasers, owners, dealers, persons, etc., or

others having an insurable interest, are protected with the same force and effect as if they severally accepted the same. The loss, if any, is to be adjusted with the purchaser, but to be paid subject to all conditions of this certificate only to the person named in the certificate who holds the lien or mortgage upon the car, "for account of all interests." It is provided in the certificate that it shall not be valid until countersigned by the duly authorized agent at Detroit, Mich.

It is averred by complainant that, whether a Chrysler car is sold at retail for cash or on time, the price is the same, except for the charge made for financing the deferred payments, which have heretofore varied, but which under the plan devised by complainant has become 8 per cent. upon the unpaid balance, if the sale is on time. Nor may purchaser obtain his car at a less price, whether or not he desires the protection of such insurance. The practice with respect to the sale of Chrysler cars is that the Chrysler Sales Corporation from time to time has fixed the list price of its cars, and sells them to its distributors for a cash price computed as follows: List price, less a given discount, plus war tax and certain delivery charges. Freight is paid by the distributor. In computing the discount, there is not included the war tax or the delivery charge. On July 1, 1925, additions were made to the delivery charge on all models of Chrysler cars.

The complaint, however, does not disclose whether this increase in the delivery charge corresponded in amount with the cost to the Chrysler Sales Corporation of the insurance premium which it would pay under the Palmetto contract or not, but the inference is unmistakable that such was the fact. The distributor sells to the dealer on the same basis as the distributor has bought, but allows a smaller discount on the list price. The dealer in turn sells to the retail purchaser at a price equal to the list price, plus freight, war tax, and delivery charge. The retail dealer reports to the complainant the name of the purchaser, date of sale, motor number, style, etc., on retail sales made, and also the name of the person or corporation financing the purchase, if made on time. Complainant notifies the agent at Detroit, Mich., of the insurance company, and he mails the certificate from his office in Detroit to the purchaser, and duplicates to others who to his knowledge may have an interest in the car.

Complainant alleges, while defendant denies, that the distributors of and dealers in Chrysler cars are in no way agents of the plaintiff, and that no dealer or distributor takes any part in writing or placing or in the payment for insurance under the Michigan contract. Nor, says complainant, does the distributor or dealer solicit, demand, receive, or transmit any premium. The contention of the complainant is that as to those cars shipped and to be sold at retail in Wisconsin, as is true throughout the United States, they become the property of the dealer, for which he has paid a stated price, and which he sells in Wisconsin at a stated price as his own property, and not as the agent for any one, and that the insurance becomes effective, not by virtue of anything the dealer does, but by virtue of the contract of June 16 last, entered into in Michigan, and that the insurance which becomes effective in the hands of the retail purchaser in Wisconsin becomes effective solely by virtue of the Michigan contract, and that the sale of the cars in Wisconsin by the dealers cannot be properly construed as effecting any insurance, which it claims becomes automatically effective by virtue of the Michigan contract. Most of these contentions are asserted as facts in the bill and denied by the defendant, and are, of course, to be resolved by a true construction and interpretation of the contract and the course of business thereunder, with the legitimate inferences to be made therefrom.

[1] One of the important details of this contract and plan is that the effective date of the insurance is postponed until a car is sold at retail and until title has passed from, not only complainant, but its distributors and dealers, and only takes effect upon a sale at retail and covers only the loss sustained by the retail purchaser and lien claimants whose claims grow out of the transaction of retail sale. When so sold, complainant claims, the insurance becomes automatically effective, by virtue of the Michigan contract. Plainly the theory of complainant is that this insurance is something that attaches to and follows an automobile upon its course through the market, as though a part or accessory, and that the dealer who sells the car has nothing to do with the insurance item; he merely sells the car with all its equipment, including the insurance. But this idea is erroneous for at least two reasons: (1) The insurance never has effective existence until the sale at retail, by its very terms, or, as it may differently be stated, it is only to be made operative by an act of the retail dealer; and (2) the legal concept of insurance is that, in the absence of special circumstances, it does not attach to property but to persons.

As said by Story J., in Carpenter v.

Providence Co., 16 Pet. 495, 503 (10 L. Ed. 1044), quoting Lord Hardwicke: "The society are to make satisfaction in case of any loss by fire. To whom, or for what loss, are they to make satisfaction? Why, to the person insured, and for the loss he may have sustained; for it cannot properly be called insuring the thing, for there is no possibility of doing it, and therefore must mean insuring the person from damage."

A similar thought underlies the decision in Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, wherein Justice Field says, referring to insurance contracts: "These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale."

And this thought has withstood numerous assaults, as is indicated in N. Y. Life Ins. Co. v. Deer Lodge County, 231 U. S. 495, 34 S. Ct. 167, 58 L. Ed. 332. And so we conclude that the insurance feature of the sales of Chrysler cars in Wisconsin may not be treated as an appendage or bit of equipment, of small relative cost, which passes with the transfer of the car, but must be approached as a contract between persons, the insurer and the insured, and, in so far as an insurance results, it must be viewed as a thing apart and distinct from the cars sold.

[2] What is the effect of the postponement of the operative effect of the contract? In considering this question, it should be borne in mind that we are not concerned in this suit with the validity of the contract as such, but rather with the question of whether or not the insurance eventually effected under it is so effected in Wisconsin as to give the regulatory statutes of that state opportunity to operate thereon.

The course of business, so far as a Wisconsin dealer is concerned, is that he sells a car located in Wisconsin to a Wisconsin purchaser, and offers as an incident to the sale the insurance in question; the car, including the insurance, is accepted; the purchaser pays the dealer for the car, including the insurance premium; and this all occurs between Wisconsin residents with reference to property located in Wisconsin. By the sale the dealer thus fixes the term of the insurance, which runs for one year from the date of retail sale; he normally reports the sale to complainant, who in turn reports it to the insurer and accompanies the report with a remittance of the premium. If the retail purchase is upon deferred payments, the dealer and purchaser arrange for some one to finance it, and he becomes a beneficiary, selected ordinarily, but not necessarily, in Wisconsin, and finally a certificate is mailed at Detroit to the Wisconsin insured.

The dealer in Wisconsin clearly does these things in Wisconsin: (1) He sells the car, including the insurance. (2) He collects the price, including the premium (that he does not remit it is of small moment, having already advanced it, receiving nothing for it). (3) He fixes the term of the insurance. (4) He selects the beneficiaries—purchaser and financier. (5) He notifies complainant of these details by mail. All these things, except the last, are essentials to the completion of the insurance contract, and bring it into actual existence, and occur in Wisconsin, between residents of that state; the dealer acting with authority under the Michigan contract. On the oral argument a certificate said to be typical of those delivered to purchasers was handed to the court, which bore the indorsement: "Any Chrysler dealer will notify purchaser, to whom notice of any such loss should be given." We are now informed that such indorsement is eliminated from all certificates which are being sent out. The indorsement quoted above was slightly confirmatory, but its elimination does not detract from the relationship of the dealers to the insurance, as the whole plan discloses it.

Having these facts in mind, and the thought that insurance is a matter of contract between persons, we are confronted immediately by the fact that the Michigan contract is not an insurance in præsenti, but rather a contract to insure in the future. It is not intended to indemnify Chrysler, nor its distributors, nor dealers, though the property successively passes through them in unqualified ownership. Properly construed, we deem the contract one for future insurance, to indemnify the retail purchasers, and through them those who finance the retail purchases, all to be provided by using the Chrysler organization of distributors and dealers to secure the adoption of the insurance by the retail purchasers and lien holders.

How, then, can it be said that what the dealer does in Wisconsin are mere collateral acts, where they operate to bring the insurance into effect for the first time—give it life—and only by those acts are those essentials of insurance, identity of insured, identity of property, term of the risk, and payment

of premium, consummated? When, in addition, it is considered that in effect the Chrysler dealers act as solicitors of insurance as an incident to the sale of automobiles, we have no doubt that the insurance received by each retail purchaser in Wisconsin is in fact consummated in that state. The contention of counsel that the insurance is effective, whether the retail purchaser wishes it or not, is erroneous, we think, and based on the theory that the insurance is the subject of barter and sale, and passes, as does the windshield wiper, as an accessory, from the dealer to the purchaser. The analogy is incomplete, for reasons already stated, and also because the dealer never has the insurance to pass, but rather it springs into existence upon its acceptance by the purchaser. That such acceptance is practically assured by the practice of demanding its cost, regardless of whether the purchaser desires the insurance or not, does not alter the fact. In our opinion, the insurance on cars sold by Wisconsin dealers, in Wisconsin to Wisconsin purchasers, is consummated within that state.

Among other facts which tend to support this conclusion, it may be borne in mind that by the Michigan contract it is provided that "insurer shall issue certificates to purchaser substantially in the form attached," while the course of business is to mail such certificate to the retail purchaser. It is evident that it is deemed of some importance that the retail purchaser receive the certificate as his visible evidence of indemnity, and the course of business adopted indicates that delivery of the same to him is made in Wisconsin through the postal service as the agent of the insurer. Again, while it is contended that the retail dealer does not sustain an agency relation to any one, and sells the car as his own property, the whole plan confidently assumes that the dealer will sell the automobile at retail and collect the price designated as the list price, together with the freight and delivery charges; and, more to the point, it is assumed that the retail dealer will make report of the sale of the car at retail for the purpose of furnishing the basis, not only for the issuance of a certificate to the purchaser, but also—and this is no doubt of some importance to the insurer—for the purpose of determining the premiums which Chrysler shall be required to pay to the insurer.

We have not overlooked the fact that all of these acts performed by the dealer in Wisconsin are to him no doubt mere incidents in the larger transaction of selling an automobile; even though he stresses, as he probably does, the insurance feature in his "sales talk," nevertheless this does not make the insurance feature any the less an item which the state may, and in common with most, if not all, has seen fit to, regulate.

Nor do we believe that the fact that the Michigan contract is written in favor of "Chrysler Sales Corporation and/or for account of whom it may concern" alters the conclusion indicated. The fact that the contract in question postpones the *existence of any insurance* until after the transactions in Wisconsin above outlined differentiates the contract here from any in the cases called to our attention or which an independent search has revealed. Even in those cases where insurance in præsenti exists and a change of ownership occurs, the insurance is enforced on behalf of those intended by that phrase, "provided the person who ordered it had the required authority from the former, or they subsequently adopted it." Hooper v. Robinson, 98 U. S. 536, 25 L. Ed. 219; Hagan v. Scottish Ins. Co., 186 U. S. 423, 22 S. Ct. 862, 46 L. Ed. 1229; Waring v. Indemnity Co., 45 N. Y. 606, 6 Am. Rep. 146. While it is held that adoption may be shown informally, and may occur even after loss, it is clear that in those cases operative insurance did not await the selection and assent of one of those intended by the phrase "whom it may concern"; nor was the term of the effective insurance fixed by the transaction with him.

We do not intend to imply that there are no other serious questions presented by the contract and facts here; but, laying those questions aside, we thing the above considerations are sufficient to repel the idea that the phrase "whom it may concern" materially affects the question before us. Enough has already been said, we think, to indicate that our view of the case at bar clearly distinguishes it from the case of Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832, in which no question of agency was involved, and wherein it was held the contract was "made outside of the state, to be performed outside of the state, although the subject was property temporarily within the state." Page 592 (17 S. Ct. 432).

In the instant case the contract, and the only contract which actually affords effective insurance, is made in Wisconsin, to be performed there (Lumbermen's Ins. Co. v. Meyer, 197 U. S. 407, 416, 25 S. Ct. 483, 49 L. Ed. 810), and the subject is property located there. Nor is Minnesota Association v.

Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573, in point, for there the members who solicited new members were without authority to obligate it. In Ætna Life Insurance Co. v. Dunken, 266 U. S. 389, 45 S. Ct. 129, 69 L. Ed. 342, the Tennessee contract was in full force before the assured removed to Texas, and what transpired thereafter was in fulfillment of the completely effective Tennessee contract. Nor are we dealing here with a case where a resident of Wisconsin has in another state entered into a contract with a foreign corporation, so that the laws of Wisconsin need be given extraterritorial force, as was condemned in N. Y. Life Ins. Co. v. Head, 234 U. S. 149, 34 S. Ct. 879, 58 L. Ed. 1259. On the other hand, our view is that, notwithstanding it is quite different in its facts, the instant case comes squarely within the principles of Hooper v. California, 155 U. S. 648, 15 S. Ct. 207, 39 L. Ed. 297; Nutting v. Mass., 183 U. S. 553, 22 S. Ct. 238, 46 L. Ed. 324, and Pennsylvania Lumbermen's Ins. Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810.

Our attention has been called to the decisions of the United States District Court for the Southern District of Ohio in Palmetto Fire Ins. Co. v. Conn., 9 F.(2d) 202, and the United States District Court for the Southern District of New York in Palmetto Fire Ins. Co. v. Beha, 11 F.(2d) ——, and rendered in actions brought by the Palmetto Fire Insurance Company to enjoin the revocation of its licenses to do business in the states of Ohio and New York by the respective superintendents of those states. In the Ohio case it was held that the statute of that state prohibiting an insurance company legally authorized to transact business in Ohio from writing, placing, or causing to be written or placed, insurance upon property situated or located in that state, except through a legally authorized agent therein, who should countersign all policies and enter the payment of the premium upon his record, was a valid law so far as insurance corporations who had taken out licenses were concerned, and that such a license might properly be revoked if the statute was violated. The question there passed upon is quite clearly not involved in the instant case.

In the New York case the defendant superintendent of insurance was enjoined from revoking the license of the Palmetto Fire Insurance Company upon the ground, as we read the decision, that the New York statutes do not prohibit the transactions involved, and that, the transactions being valid in Michi-

gan, and not made invalid in New York, no legal cause for cancellation of the license existed. In that opinion it is said: "The policy which is issued at Detroit, Mich., under the plan insures the Chrysler Sales Corporation on cars sold together with others who may have an interest therein, including the ultimate purchaser in New York, who pays no premium, but can take advantage of the insurance if he chooses to avail himself of it. No renewal of the policy is allowed. It amounts to a gift of insurance for one year if the ultimate purchaser of a Chrysler car sees fit to avail himself of it."

It is apparent, from a comparison of the foregoing quotation with what we have said, that the New York court has arrived at a very different interpretation and construction of the contract and the course of business under it from ours. That opinion has caused us to re-examine the grounds of our own construction, but we find ourselves unable to subscribe to that part of the opinion which underlies the conclusion that the insurance provided under the plan for the retail purchaser is a gift which arises out of a Michigan transaction. With all due deference, we adhere to the interpretation of the contract and the course of business thereunder hereinbefore outlined. The business done and to be done in Wisconsin under the plan in question, in our opinion, constitutes the transacting of business within the state, and the Palmetto Company is one of those validly required to take out and pay for a license under section 201.41 (1) of the Wisconsin Statutes, quoted above.

[3] It is contended that the Chrysler dealers are not agents of the insurance company, and are not within the terms of the penal statutes under which defendant threatens prosecutions. Granting that they are not agents in the conventional sense, and probably do not regard themselves as such, nevertheless that question must be determined by what they do in fact, its effect, whom they do it for, and by what authority, and by such test they clearly act within Wisconsin to effect insurance for purchasers upon automobiles, on behalf of the Palmetto Company, with authority. Granting, further, that such statutes must be strictly construed, we have no hesitancy in concluding that the Chrysler dealers in Wisconsin, operating under this plan, bring themselves within both the letter and spirit of section 209.04, Wis. Sts. The word "person," in the section, is not to be treated as surplusage, and must be held to include those who, though not officers, bro-

9 F.(2d)—43

kers, agents, or subagents in the legal sense, in an analogous capacity, perform for the insurance company the forbidden acts of aiding "in any manner in transacting the business of or with such corporation (one required to pay a license) in placing risks or in collecting any premiums or assessments or effecting insurance therein."

Whether other Wisconsin statutes validly apply is not necessary to decide, for, from what has already been said it follows that the application for a preliminary injunction must be denied.

It is so ordered.