THE PEOPLE OF THE STATE OF NEW YORK ex rel. BERT KIRKMAN et al., Appellants, v. GUY VAN AMRINGE, as City Magistrate of the City of New York, Respondent.

(Argued January 7, 1935; decided February 26, 1935.)

*Harold Stern* for appellants. The group insurance policy is a valid and subsisting contract. On the agreed statement of facts, the law does not consider the insurance association as transacting business in the State of New York. (*Huntington* v. *Sheehan*, 206 N. Y. 486; *Stone* v. *Penn Yan, Keuka Park & Branchport Ry. Co.*, 197 N. Y. 279; *Providence Sav. Life Ins. Society* v. *Kentucky*, 239 U. S. 103; *New York Life Ins. Co.* v. *Dodge*, 246 U. S. 357; *Minnesota Commercial Men's Assn.* v. *Benn*, 261 U. S. 140; *International Life Ins. Co.* v. *Sherman*, 262 U. S. 346; *Palmetto Fire Ins. Co.* v. *Beha*, 13 Fed. Rep. [2d] 500; *Compagnie Du Port De Rio De Janiero* v. *Morrison Mfg. Co.*, 19 Fed. Rep. [2d] 163.) The relators are not the agents of the insurance association and do not aid in the solicitation or procurement of the policies or certificates of insurance, nor in the adjustment of losses, nor in the transaction of business as contemplated by section 1199 of the Penal Law. They are not, therefore, guilty of a violation of such section. (*Bossert* v.

*Dhuy*, 221 N. Y. 342; *Salzano* v. *Marine Ins. Co.*, 173 App. Div. 275; *People* v. *Imlay*, 20 Barb. 68.)

*William Copeland Dodge, District Attorney (Ambrose J. Delehanty* of counsel), for respondent. The Legislature intended to prohibit and punish any one aiding the transaction of business for a foreign insurance company which had failed to designate the New York State Superintendent of Insurance as its attorney in fact. (Cons. Laws, ch. 28, § 50; Penal Law, § 1199.)

CROUCH, J. The appellants, charged with a violation of section 1199 of the Penal Law, were held by the magistrate for a hearing. Writs of habeas corpus obtained by them were dismissed. The orders of dismissal were affirmed by the Appellate Division.

The sole question here is whether, within the intendment of that section, the appellants in any manner aided the transaction of any business in this State by a foreign insurance company which had not designated the Superintendent of Insurance as its attorney upon whom lawful process might be served.

The facts are undisputed. The appellants are officers of Local Union No. 3 of the International Brotherhood of Electrical Workers. Local Union No. 3 is an unincorporated association located in the city of New York. On May 20, 1927, Local Union No. 3 at Washington, D. C., entered into a written contract with the Union Co-Operative Insurance Association. That contract is in the form of a group life insurance policy issued pursuant to a written application by Local Union No. 3. The Union Co-Operative Insurance Association is a foreign corporation organized under an act of Congress. It has its home office in the city of Washington; it maintains no office in this State for the transaction of business; it has no authorized agents or representatives here, and it is not licensed under the laws of this State to do business here.

The contract or group policy is an agreement by the Insurance Association to pay a certain amount on due

proof of the death of any member of Local Union No. 3, occurring while the policy is in force as to such member. It was issued in consideration of the payment on its date of a stated premium, and of a further monthly premium in each succeeding month based on the amount of insurance then in force to be calculated as therein provided. It contained, among others, the following provisions:

" Members in good standing in the Union on the policy date are immediately eligible for insurance, and those becoming members of the Union after the policy date will be eligible for insurance upon attaining membership in the Union. Insurance shall be effective from the policy date for those who are then eligible and whose names appear on the application of the Union for insurance; new members and members not eligible for insurance on the policy date become insured hereunder upon receipt by the Association of a schedule giving the data in respect to such members as is required by the schedule annexed to the application for insurance, together with a certificate that such members are members of the Union in good standing and are all in good health, at the time of the submission of the supplemental schedule. Such schedule shall be sent by the Union to the Association monthly, on the premium date."

" The Association will issue to the Union for delivery to each member insured hereunder, an individual certificate, setting forth a statement of the amount of insurance protection to which the member is entitled and to whom it is payable."

Under the by-laws of Local Union No. 3, all members are required to carry insurance under the group policy. Included in the quarterly dues of every member is the sum of five dollars and ten cents, his share of the premium payable by Local Union No. 3 to the Insurance Association under the terms of its contract. The financial secretary each month sends by mail to the Insurance

Association at its home office in Washington a check for that portion of the total dues collected representing insurance premium. The Insurance Association does not pay any commission or compensation of any kind to Local Union No. 3 or to its officers or agents.

Section 1199 of the Penal Law must, we think, be read in connection with various provisions of the Insurance Law (Cons. Laws, ch. 28), and in particular with sections 49 and 50. (Cf. *Salzano* v. *Marine Ins. Co.*, 173 App. Div. 275.) So read it seems reasonably clear that there can be no violation of section 1199 except where a person in this State aids in the transaction of business in this State by an insurance company not authorized to transact business here. It does not cover aid extended here to an insurance company in the lawful transaction of its business elsewhere. Two questions thus arise: (1) Is the Insurance Association transacting business in this State; and (2) if so, are the appellants in any manner aiding the transaction of that business for the Insurance Association.

(1) It is settled law that a State cannot forbid contracts of insurance relating to risks within its limits from being made between a citizen and a corporation in another State. (*Allgeyer* v. *Louisiana*, 165 U. S. 578; *Ætna Life Ins. Co.* v. *Dunken*, 266 U. S. 389; *New York Life Ins. Co.* v. *Dodge*, 246 U. S. 357.)

Obviously the Insurance Association in making its insurance contract with Local Union No. 3 was not doing business in this State. (*Huntington* v. *Sheehan*, 206 N. Y. 486; *Stone* v. *Penn Yan, K. P. & B. Ry.*, 197 N. Y. 279.) Nor was the interest acquired under that contract upon its issuance by the then existing members of the union whose names appeared on the application for insurance the result of any act in this State by the Insurance Association. In respect to the interest of those who subsequently became members of the union, the same thing is true. *Palmetto Fire Ins. Co.* v. *Conn* (272

U. S. 295) holds nothing to the contrary. The question in that case was not whether the insurance company was doing business in Ohio, but whether or not, upon constitutional grounds, the State had power to deny it the right to enter or remain in the State unless it paid, as part of the price, a tax upon transactions consummated in the State. There the purchaser of a Chrysler car by acts done in Ohio automatically obtained for himself, whether he wished it or not, certain insurance which took effect upon delivery of the car or of a bill of sale. Here it was expressly stipulated that the new members did not become insured *ipso facto* by attaining membership. Before insurance became effective and before the individual certificate was issued, certain data, including proof of membership and of good health, was required to be submitted to the Insurance Association at its home office in Washington. We are unable to see that the contractual rights, either of Local Union No. 3 or of any of its members, came into existence by virtue of any acts which would constitute the transaction of business in this State.

(2) It follows, under the construction which we have put upon section 1199, that even though appellants by their acts could be said to have been aiding the Insurance Association, they were guilty of no violation of the section because their aid was not given in the transaction of business within the State. Had it been otherwise, still there would have been no violation since they were in no sense acting for the Insurance Association, but at most were acting on behalf of Local Union No. 3, of which they were officers, and on behalf of the individual group members.

The orders should be reversed, the writs of habeas corpus sustained and the prisoners discharged.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and LOUGHRAN, JJ., concur; FINCH, J., not sitting.

Ordered accordingly.