**CONNECTICUT GENERAL LIFE INS. CO v. BOSEMAN.**

No. 8077.

Circuit Court of Appeals, Fifth Circuit.

July 14, 1936.

Rehearing Denied Aug. 27, 1936.

Major T. Bell and Lamar Cecil, both of Beaumont, Tex., for appellant.

Leon P. Howell, of Beaumont, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The sole question presented by this appeal is whether the contract of insurance against total and permanent disability on which John Boseman recovered is governed by the law of Texas. The trial court so held, awarding judgment for attorney's fees and damages as fixed by a Texas statute, and denying validity to a provision of the insurance contract that no claim would be paid after termination of Boseman's employment unless written notice were given of it within 60 days after the employment ceased. The court found, and it is conceded, that the provision about notice is valid under the law of Pennsylvania which the insurer contends is controlling, and that no attorney's fees or damages would be recoverable under that law. We put aside the question about statutory damages and attorney's fees, because that about notice will control the case.

The contract is one of group insurance for employees. The insurer is a corporation of Connecticut, with its home office at Hartford. It had during the time here involved a permit to do business in Texas, but had never qualified by making the required deposits, had no office or agents in Texas, and had written no insurance there of any kind since 1917. The employer who negotiated for the insurance is Gulf Oil Corporation of Pennsylvania, having its home office at Pittsburgh. Boseman was an employee of Gulf Refining Company which is an affiliate or subsidiary of Gulf Oil Corporation, and which was carrying on business at Port Arthur, Tex. Prior to 1932, Gulf Oil Corporation, for its employees and those of its subsidiaries and affiliates, had arranged group insurance with this same insurer under contracts known as policies G5039 and G5545, and Boseman was insured under the latter. On March 15, 1932, at Pittsburgh, Gulf Oil Corporation in behalf of itself, its subsidiaries, and affiliate companies, by a writing there delivered to an agent of the insurer, requested that policies G5039 and G5545 be canceled as of March 31, 1932, and that a new policy, G5039R, be issued in Pittsburgh and to be governed by the laws of Pennsylvania, under which employees shall be insured who have complied with its terms. Under date of March 7, 1932, Boseman had at Port Arthur signed and delivered to an officer of Gulf Refining Company an application for insurance under the new policy to be effective April 1st, agreeing to be bound by the rules governing it, and authorizing the deduction from his pay each month of the proper amount in advance for premium and agreeing to take the new insurance in lieu of the old. This paper was not sent to the insurer, but remained in the employer's files. The new policy was issued under date of April 1, 1932, and delivered at Pittsburgh to Gulf Oil Corporation. Reciting that it is issued in accordance with the application and cancels and substitutes the former policies, it states that "Connecticut General Life Insurance Company, Hartford, Connecticut (hereinafter called the Company), specifies in this policy the terms and conditions under which it insures certain employees of Gulf Oil Corporation of Pennsylvania and/or subsidiary and/or affiliated companies (hereinafter called the employer)." The policy proceeds to define the risks covered and the employees who are eligible for insurance, and includes those who on March 31, 1932, were insured under the former policy, G5545, and hence included Boseman. Other employees are required to have completed a stated period of service. "An employe may elect insurance under this policy by completing any form of payroll deduction order approved by the employer. Each employe electing the insurance before becoming eligible will be insured automatically on the day he becomes eligible." In some stated cases evidence of insurability satisfactory to the company is required, but Boseman was not included in them. The period of the policy and the premium requirements are: "This policy

is issued for a term of one year from April 1st, 1932, 12:01 A. M. Standard Time at the employer's address, in consideration of the application of the employer, the payment of the binding premium of $1.00, and the payment of such further premiums as are provided herein." "On the effective date of this policy and on each annual policy renewal date thereafter an average annual premium rate will be established" in a stated way. "Premiums are due and payable monthly in advance at the home office of the Company," determined as above. "If any premium is not paid when due this policy shall cease except that 31 days of grace will be allowed without interest for the payment of all premiums other than the binding premium." The employer at the beginning of each month is to notify the company of new employees taking insurance and of those whose insurance has terminated, and premium adjustments are to be made accordingly. "Upon termination of employment of any insured employe his insurance shall be cancelled as follows except as hereinafter provided: 1. Employes who upon termination of employment request a refund of the unearned premium shall have insurance cancelled upon termination of employment." Boseman's employment ceased October 8, 1932, and he received a proportionate refund for that month. "The policy and the application of the employer, copy of which is attached to and made a part of this policy, and the applications of the employes, if any, shall constitute the contract between the parties." "This contract is issued and delivered in the City of Pittsburgh in the Commonwealth of Pennsylvania, and is governed by the laws of that Commonwealth." Other details of the insurance are omitted as not here material. The policy, however, contains this: "The Company will issue to the employer for each insured employe an individual certificate. The certificate will in no way void any of the terms and conditions outlined in the policy, but will show the insurance protection to which the employe is entitled, to whom payable, and the conversion privilege." The Gulf Refining Company notified Gulf Oil Corporation of Boseman's application for insurance and Gulf Oil Corporation notified the insurer, and about May 1st the insurer issued a certificate effective April 1st which states that it is issued pursuant to the above-quoted provision of the policy and certifies that the insurer "has issued a policy of cooperative group life insurance to Gulf Oil Corporation and/or subsidiary or affiliated companies, executed and delivered in the Commonwealth of Pennsylvania, and that subject to its terms and conditions John Boseman, an employe, is insured for $4,-000." Many but not all of the terms and conditions of the policy are annexed to the certificate, and among them this: "No claim for permanent disability incurred by any employe during employment shall be paid after the termination of such employment unless the employe gave written notice of disability to the Company during the period of employment or within sixty days thereafter." This certificate was delivered to Gulf Oil Corporation in Pittsburgh and was sent by it to Port Arthur to Boseman. Boseman lived and worked at Port Arthur, and the deductions from his pay were made there. Neither Boseman nor any other employee had any direct communication with the insurer previous to making claim, but only with the employer. Both the officers of the employer and of the insurer testified that the former were not in any manner authorized nor did they attempt to act for the insurer, but acted for and in behalf of the employees touching the insurance. The Gulf Oil Corporation paid the insurer the required premiums at Pittsburgh or Hartford, and reimbursed itself in part only by the pay deductions of the employees.

Group insurance is of recent origin. It is usually cheaper than individual insurance probably because the risks are in a measure self-selecting and because the expense to the insurer of writing it and administering it is slight. That taken by employers for employees usually has a feature of benevolence or paternalism, sometimes being paid for entirely by the employer, sometimes in part, as in this case. There are four parties interested in the contract; the insurer, the employer, the employee, and his beneficiary. The certificate issued in this case to the insured employee is clearly not the contract of insurance, for it says so on its face. The Commission of Appeals of Texas so held of a similar one in Wann v. Metropolitan Life Ins. Co., 41 S.W.(2d) 50. We looked to a certificate, however, to aid a construction of the policy in Metropolitan Life Ins. Co. v. Foster (C.C.A.) 67 F.(2d) 264. Since the certificate is not the contract nor at all

necessary to the existence of the insurance (All States Life Ins. Co. v. Tillman, 226 Ala. 245, 146 So. 393), the time and place of its delivery are unimportant to the present inquiry. The insurance as to any employee is perfect so soon as eligibility and his election concur, the policy being in force. Notice to the insurer is not a prerequisite, though it is to be given in due course. Boseman was eligible from the beginning, and elected to take the insurance before the policy was issued by signing in advance the necessary pay deduction order to his employer. His insurance waited only on the issuance of the policy and became effective instantly after and because of that act. The insurer did not authorize the employer or its agents to solicit Boseman in Texas to become insured. According to the evidence, the employer initiated the whole matter, obtaining from Boseman and doubtless from many other employees authority to proceed, and thereafter obtained the insurance on its own and their behalf. Even as to employees who did not consent in advance the reasonable conclusion is that the employer's action was taken for them in anticipation of their ratification, which occurred on their signing a pay deduction order. Employees' group insurance partly or wholly paid for by the employer resembles to some extent insurance by a mutual benefit association, which is obtained by joining the association. Although the insurance of the particular new member arises only on his becoming such, his insurance is usually governed not by the law of the place where he lives and receives his certificate, but of that under which the association operates. The federal courts have been inclined to treat such insurance not as diverse contracts under the particular laws of the several states where members reside, but as under the laws of the home state, and thus uniform. Supreme Council of Royal Arcanum v. Green, 237 U.S. 531, 532, 35 S.Ct. 724, 59 L.Ed. 1089, L.R.A.1916A, 771; Modern Woodmen of America v. Mixer, 267 U.S. 544, 45 S.Ct. 389, 69 L.Ed. 783, 41 A.L.R. 1384; Minnesota Commercial Men's Association v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573. Many courts hold that employees' group insurance, whether the employer pays all or only a part of the premium cost, is a contract between the insurer and the employer for the benefit of the employees and their named beneficiaries, and

that the latter sue the insurer only as third persons for whose benefit the contract was made. This view is emphasized by the right of the employer to cancel the insurance and release the insurer, or by this result occurring from the employer's failure to pay the agreed aggregate premium. See Carpenter v. Chicago & E. I. R. Co., 21 Ind.App. 88, 51 N.E. 493; Gallagher v. Simmons Hardware Co., 214 Mo.App. 111, 258 S.W. 16; Duval v. Metropolitan Life Ins. Co., 82 N.H. 543, 136 A. 400, 50 A. L.R. 1276; Leach v. Metropolitan Life Ins. Co., 124 Kan. 584, 261 P. 603; People ex rel. Kirkman v. Van Amringe, 266 N.Y. 277, 194 N.E. 754; Connecticut General Life Ins. Co. v. Speer, 185 Ark. 615, 48 S.W. (2d) 553; Equitable Life Assur. Soc. v. Hall, 253 Ky. 450, 69 S.W.(2d) 977; Kingsland v. Missouri State Life Ins. Co., 228 Mo.App. 198, 66 S.W.(2d) 959; Davis v. Metropolitan Ins. Co. 161 Tenn. 655, 32 S.W.(2d) 1034; Thompson v. Pacific Mills, 141 S.C. 303, 139 S.E. 619, 55 A.L. R. 1237. Several of the cases cited strongly assert that the employer is not to be regarded as the agent of the insurer soliciting insurance in the employee's state, but as the representative of the employee in making and maintaining the insurance. We are persuaded that this is the true view, although a different conclusion is maintained by a Texas Court of Civil Appeals in Connecticut General Life Ins. Co. v. Lockwood, 84 S.W.(2d) 245, and Connecticut General Life Ins. Co. v. Dent, 84 S.W.(2d) 250. There may arise cases in which group insurance is made a cover by an insurance company for soliciting business in a state in which it is not qualified to do business, but this is not such. In Palmetto Fire Ins. Co. v. Conn, 272 U.S. 295, 47 S.Ct. 88, 71 L.Ed. 243; Id. (D.C.) 9 F.(2d) 202, 203, and in Chrysler Sales Corporation v. Smith (D.C.) 9 F.(2d) 666; Chrysler Sales Corporation v. Spencer (D. C.) 9 F.(2d) 674; there was no true group insurance but a wholesale plan to insure automobiles sold at retail; each insurance was distinct with its own policy and for its own premium paid in the purchase price by the buyer of the car. Whether we look at the case before us in its general aspect or at the special circumstances under which Boseman became insured, we are of opinion that the transaction of insurance occurred in Pennsylvania and not in Texas. If employees in Texas desire to join in an insurance plan about

to be set up or already in operation in Pennsylvania, and either in person or through their employer take steps in Pennsylvania to do so, the laws of Texas do not control it. Allgeyer v. State of Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832; People ex rel. Kirkman v. Van Amringe, 266 N.Y. 277, 194 N.E. 754; Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, 92 A.L.R. 928.

The conclusion that the laws of Pennsylvania ought to control is much strengthened by the express agreement to that effect of all parties both in the application for the policy, in the policy itself, and in the certificate accepted by Boseman. Parties in contracting may adopt as part of their contract the laws of a state other than their own if not contrary to the law or public policy of the state where the contract is made and to be performed. Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788. Let it be remembered that this policy was applied for, the first premium was paid, and the policy was delivered in Pennsylvania, and that ordinarily fixes the place where an insurance contract is considered to be made. Mutual Life Ins. Co. v. Hill, supra. The term of the policy runs from April 1st to April 1st, irrespective of when any employee may come in under it. The $1 binding premium and the agreed average premium must be paid by the employer in full to initiate and to sustain the policy irrespective of whether any or all employees have paid their contribution to the employer. The insurer did not go out of Pittsburgh to make this arrangement, and all notices or payments necessary to carry it on are done there. The employee transacts nothing with his insurer in Texas in making and sustaining his insurance, but all his transactions are with the employer and through him with the insurer in Pittsburgh. The business is substantially done in Pittsburgh, and the parties may without imputation of evading the law of any other state agree that they are dealing uniformly under the law of Pennsylvania. Boseman, in applying to his employer for participation in the policy and by accepting his certificate, expressly agreed to the provision requiring notice of claim, and it is a material part of the insurance contract. The law of Pennsylvania sustains it, while the law of Texas, as the parties concede, makes a notice period of less than 90 days unreasonable and void.[1] The law which will sustain rather than that which will defeat a plain and fair agreement ought, where possible, to be applied. Boseman did not give notice of claim even within the 90 days mentioned in the Texas statute, but more than 6 months after his employment ceased and after he received the rebate of premium which marked the cessation of his insurance. He is not entitled in the face of his contract and of the law under which he agreed that it was being made to assert such claim. The judgment is reversed, and the case remanded for further proceedings not inconsistent herewith.

Judgment reversed.

[1] See article 5546, Texas Revised Statutes of 1925, which does not mention insurance but is held applicable to it in Grand Lodge v. Hill (Tex.Civ.App.) 277 S.W. 797; Southern Travelers' Ass'n v. Cole (Tex.Civ.App.) 45 S.W.(2d) 675; Southern Travelers' Ass'n v. Masterson (Tex.Civ.App.) 48 S.W.(2d) 771.