CONSOLIDATED RAIL CORPORA-
TION, a National Railroad Corporation
and Robert W. Blanchette, Richard C.
Bond and John H. McArthur, Trustees
of the Property of Penn Central Trans-
portation Company, Debtor, Appellants
(Defendants Below),

and

Betty J. (Briner) Smith, Appellant
(Plaintiff Below),

v.

The TRAVELERS INSURANCE COMPA-
NIES, a/k/a "The Travelers," a corpo-
ration, Appellee (Defendant Below).

No. 784S291.

Supreme Court of Indiana.

July 26, 1984.

Harold Abrahamson, Michael C. Adley, Abrahamson, Reed & Tanasijevich, Hammond, for appellants.

Hoeppner, Wagner & Evans by Larry G. Evans, Katharine E. Gerken, Valparaiso, for appellee.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Third District Court of Appeals by Consolidated Rail Corporation (hereinafter "Conrail") and Betty J. (Briner) Smith. Smith was plaintiff in the trial court and brought action against Conrail and the Travelers Insurance Company (hereinafter "Travelers") for collection of benefits arising from the death of her husband, a railroad employee. The question presented to us results from a rather unusual turn of events surrounding the trial court's entry of two separate summary judgments, one in favor of Smith and against Conrail and another in favor of Travelers.

On June 3, 1973, Richard F. Briner was involved in a fatal automobile · accident while employed by the Penn Central Transportation Company. Travelers had issued a group insurance policy covering Penn Central employees which included accidental death and dismemberment insurance. This insurance was provided by the railroad company as a benefit to its employees. Conrail subsequently purchased the assets of Penn Central Transportation Company and all parties agree that Conrail now stands in Penn Central's shoes and is successor to all liabilities which formerly belonged to Penn Central.

Penn Central furnished to its employees a brochure of approximately five pages explaining what its employee benefits were and what its employees could expect from the company. The brochure began: "Now that we're one … here's what it means to you in terms of your Employe (sic) Benefit Program." The rest of the brochure explained five different programs for the benefit of employees, namely: 1) thrift plan; 2) group life insurance plan; 3) medical care plan; 4) supplemental pension plan; and 5) accidental death and dismemberment insurance plan. It is this last provision of the brochure which is at issue here and which reads:

"5 ACCIDENTAL DEATH & DISMEMBERMENT INSURANCE PLAN (AD & D)

If you are earning at least $10,000 a year or hold an Air Travel Credit Card, you are automatically covered by this Plan. If you did not have this coverage before, you should complete the enclosed enrollment form and forward it to the Company in the envelope provided.

Insurance Coverage

If you are injured *while traveling on business for the Company*, and your injuries result in death or dismemberment within 1 year after the accident, the plan will pay the following benefits:

| For loss of | Amount Payable |
|---|---|
| –life | $100,000 |
| –two or more members (hand, foot or eye) | 100,000 |
| –one member | 50,000 |
| –thumb and index finger of same hand | 25,000 |

*In addition*, if you become disabled within 180 days of accidental injury, remain totally disabled for at least 1 year and *totally and permanently* disabled thereafter, the Plan will pay you $200 a week for the period of future continuous total disability. The maximum payable is $100,000-less any amount paid for dismemberment or loss of sight.

SOME EXCLUSIONS

Like most plans of this type, your AD & D Plan does not pay benefits for losses resulting from suicide (or attempted suicide), war, Armed Forces duty, traveling in aircraft not licensed to carry passengers, or from an accident occurring while a passenger in a Company owned or operated aircraft.

TERMINATION OF COVERAGE

Your AD & D insurance coverage stops when you leave the covered group, when

your employment terminates, or when you retire or reach age 65—whichever comes first."

This provision tracked the coverage stated in the pertinent Travelers insurance policy.

Richard Briner was killed in an automobile accident while on Penn Central-Conrail-business. On September 14, 1978, Briner's wife filed a complaint against Travelers based on the group insurance contract. She specifically claimed that her husband was injured while in Conrail's employ, that he was traveling on business for the company when injured, that he was earning more than $10,000 in salary and that he died as a result of such injuries within one year after the accident. Travelers denied coverage under the policy. On November 8, 1978, Plaintiff Smith amended her complaint to state an additional claim against Conrail based on certain representations made by the railroad in its brochure describing employee benefits. Both Travelers and Conrail filed answers denying liability for Smith's claim and praying for judgment on their answers. After the railroad filed its answer, Smith filed a motion for partial summary judgment against defendant Conrail. The basis for her motion was that the railroad brochure was legally binding upon Conrail. On April 24, 1979, the trial court entered summary judgment in favor of Smith and against Conrail in the amount of $144,340.16. This amount represented the $100,000.00 benefit provision stated in Conrail's brochure plus accrued interest at 8%. In granting Smith's motion for partial summary judgment against Conrail, the trial court, inter alia, made the following conclusions of law:

"1. That the brochure introduced into evidence in this Cause as plaintiff's Exhibit 'A' is legally binding upon the defendants, Consolidated Rail Corporation, a national railroad corporation, and Robert W. Blanchette, Richard C. Bond and John H. McArthur, Trustees of the Property of Penn Central Transportation Company, Debtor.

2. That plaintiff's decedent, Richard F. Briner, and the plaintiff herein, Betty J. (Briner) Smith, were and are entitled to rely upon the same.

3. That there is no genuine issue as to any material facts relevant to the determination of whether plaintiff herein is entitled to recover from defendants, Consolidated Rail Corporation, a national railroad corporation, and Robert W. Blanchette, Richard C. Bond and John H. McArhtur (sic), Trustees of the Property of Penn Central Transportation Company, Debtor, under the terms of the plaintiff's Exhibit 'A', the brochure prepared by said defendants, and that the plaintiff Betty J. (Briner) Smith, is therefore entitled to a judgment against said defendants under Count III of her Amendment to Complaint."

Conrail accordingly paid the full amount of the judgment to Smith and took from her an assignment of her claim against Travelers.

On May 12, 1980, Travelers moved for summary judgment against Smith. Travelers contended that the judgment obtained by Smith against Conrail barred any claim on her behalf against Travelers since, in essence, the action against the railroad and the insurance company was on a joint obligation. Conrail countered by contending that it was not a party to the insurance agreement and was liable only on the basis of the brochure it independently issued. Conrail further argued that the claims against it and the insurance company were separate and that there was no evidence that Smith sued or obtained judgment on a joint obligation. The trial court made no specific findings but entered summary judgment in favor of Travelers. The trial court specifically held that Travelers was entitled to a judgment as a matter of law since there was no genuine issue over any material fact.

The Court of Appeals found that both of Smith's suits were based on the non-payment of the death benefit owing from her husband's employment with the railroad. They also found that the sum she became entitled to upon the death of her husband was the $100,000.00 death benefit which

the trial court awarded her plus interest due for the delay in its payment. The Court of Appeals accordingly concluded that all of her claims were disposed of by the first summary judgment. In making such findings, the Court of Appeals presumed that this case rests upon a joint obligation by both Conrail and Travelers and that satisfaction by judgment from one was a bar to further proceedings against the other. We now find that the summary judgments entered by the trial court cannot be resolved in this manner and we accordingly vacate the opinion of the Court of Appeals and reverse the trial court's entry of summary judgment in favor of Travelers.

The Court of Appeals was generally correct that a plaintiff is entitled to only one recovery for a wrong. This principle is based, however, on finding that there was one wrong, act, occurrence, or transaction or that the obligations of the defendants were based on a joint obligation. The Court of Appeals has properly stated the rule regarding tort claims against several tortfeasors as follows:

"Under elementary principles of tort law, a plaintiff is entitled to only one recovery for a wrong. Payments made in partial satisfaction of a claim must be credited against the remaining liability to prevent a double recovery."

*Barker v. Cole*, (1979) Ind.App., 396 N.E.2d 964, 970, *reh. denied* (1980). It is a basic principle of tort law that recovery from one of several joint tortfeasors forecloses action against the remaining ones. Satisfaction of the loss or release given to one of the tortfeasors releases all of them and is a bar to further proceedings on the same cause of action. *Fletcher Savings & Trust Co. v. National Surety Co.*, (1935) 101 Ind.App. 61, 198 N.E. 99. Neither of Smith's claims, however, were based in tort. Both were based on contract theories of recovery. Specifically, the summary judgment entered by the trial court against Conrail was based on the representations made by Conrail in its brochure and the reliance on those representations by Smith

and her deceased husband. In contrast, the claim against Travelers was based on its insurance contract. The tort rule still would obtain in a contract action if, in fact, the defendants were joint obligors on the same contract and the same obligation. Such was the holding in *Mutual Benefit Life Insurance Co. v. Bachtenkircher*, (1935) 209 Ind. 106, 198 N.E. 81. There, action was brought on a promissory note executed by an individual and a bank who both agreed to pay on the note. This Court there found only one contract by which both parties were liable for the payment of the one obligation. We held that a judgment against one party barred the claim against the other. *See also Wilson v. Buel*, (1889) 117 Ind. 315, 20 N.E. 231. Notwithstanding, this Court has held that the rule that a judgment upon a joint obligation works a release of a joint obligor does not apply when the obligors' liabilities are separate and several. *Giles v. Canary*, (1884) 99 Ind. 116.

It is not denied by any of the parties that under ordinary circumstances, an employer is not the insuror and is not obligated to make payments which become due under a group policy furnished for employees. The obligations of employer and insuror under a group insurance policy are separate and distinct. The employer, although agreeing to provide the insurance, is not the insuror and is not obligated to make any payments which may become due under the policy. *Carpenter v. Chicago and Eastern Illinois Railroad Co.*, (1898) 21 Ind.App. 88, 51 N.E. 493. In *Carpenter*, the defendant employer agreed to provide insurance for the accidental death of its employees in accordance with a policy issued by the defendant insurance company. When an employee was killed, his widow sued both the insurance company and the employer. The Appellate Court held that the suit against the employer based on the insurance policy was not proper because no contract of insurance existed between the employer and employee. Rather, the employee's widow was entitled to bring an action based on the policy directly

against the insurance company. Other courts also have held that group insurance contracts are between the employer and insuror for the employee's benefit and that no contract of insurance exists between employee and employer. *Connecticut General Life Insurance Co. v. Boseman,* (5th Cir.1936) 84 F.2d 701, *aff'd* (1937) 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036. In *Young v. Oak Electro-Netics Corp.,* (1970) 45 Wis.2d 197, 172 N.W.2d 685, *reh. denied,* the plaintiff filed an action to recover insurance benefits against her employer and an insurance company based on a group insurance contract and a booklet issued by the employer describing the benefits under the insurance policy. The Wisconsin Supreme Court there held that the employer was neither a party to the insurance agreement nor a guarantor of benefits under the policy. We note:

> "The employer does not, by reason of the peculiar position in which he is placed, become a guarantor of the payment of the insurance, nor an insurer. So far as direct liability upon the policy of insurance is concerned, he has none, and he is not a proper party in a suit by the employee against the insuror to recover benefits promised therein."

1 Appleman, *Insurance Law and Practice* § 43.25 at 108 (1981).

When the trial court entered its summary judgment against Conrail, it suggested that Conrail was Travelers' agent and made reference to the fact that Conrail's statement about accidental death insurance in its brochure tracked the policy issued by Travelers. The only rationalization the trial court made in its entry of summary judgment, however, was stated in its "conclusions of law." The trial court therein found that Conrail was obligated to pay Smith's claim since Smith had relied on the company's representation in its brochure that it was responsible for paying a death benefit. We find no grounds by which we can determine that the trial court's judgment rested upon Conrail's obligation to pay the insurance claim of which Travelers was the primary obligor. The law does not make Conrail such a joint obligor with Tra-

velers and the trial court did not so hold. The trial court's only reason for finding Conrail responsible to pay a death benefit was Conrail's written brochure. Moreover, the trial court made no findings or conclusions and gave no reasons for its entry of the second summary judgment in favor of Travelers other than to say that there were no material facts to be decided by the court.

█ It appears to us that there are many facts unresolved between the parties to this lawsuit. Although Smith did recover her husband's death benefit from Conrail, her claim against Travelers on its insurance contract is still outstanding since her recovery from Conrail was based on Conrail's written representations. A person can collect more than one death benefit if each benefit stems from a separate obligation and if the claimant has an insurable interest as Smith certainly has. We note in passing that the equity question raised by Smith collecting twice, once from each defendant, is no more disturbing than the fact that Conrail, not an obligor by the original insurance contract, was required to pay the claim while Travelers, the primary obligor, received judgment. Smith, of course, is not attempting to collect twice having assigned all of her rights in the claim against Travelers to Conrail who paid her claim in full.

█ We now find that there still exists a viable action between Smith and Travelers which Smith assigned to Conrail for resolution. The exigent facts to be determined by the trial court pertain to the relationship between the two defendants and whether or not Travelers is liable under its policy. There are pleadings in the record showing that Travelers at one time claimed that the statute of limitations had run on Smith's claim and at another time claimed that Briner's accident and death did not take place away from his usual place of working. The trial court still must decide these issues. We note that the fact that Conrail elected not to file a cross-claim against Travelers but instead filed a Feder-

al Court action is of no moment to this Court in this decision. Moreover, the filing of a cross-claim here by Conrail against Travelers was a permissive rather than a compulsory pleading pursuant to Ind.R. Tr.P. 13(G) and Conrail's decision not to file one did not foreclose Conrail in its claim against Travelers. Considering the existing issues of material fact, we hold that the trial court improvidently entered its summary judgment in favor of Travelers.

This cause is remanded to the trial court with instructions to set aside its summary judgment in favor of Travelers.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The widow's claim upon which her action against both Travelers Insurance Company and Consolidated Rail Corporation was predicated was based upon a right to recover $100,000 in benefits provided by a group policy of accidental death insurance issued by Travelers. According to the suit, Consolidated became obligated on this policy to the same degree as Travelers because of its representations to employees which it made in writing in a brochure. The trial court agreed and concluded that Consolidated was so bound by the brochure and granted partial summary judgment for the widow against Consolidated and awarded her damages of $144,340.16. This amount was paid by Consolidated. The trial court thereafter granted summary judgment for Travelers and against the widow. I would agree with the memorandum opinion of the Court of Appeals that the payment of the death benefit to her by Consolidated fully satisfied her policy claim and left nothing upon which a further judgment for her on the policy against Travelers could stand. I would affirm the entry of summary judgment for Travelers.