THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SEA INSURANCE COMPANY, LTD., Petitioner, *v.* MARK GRAVES and Others, Constituting the Tax Commission of the State of New York, Respondents.

Third Department, June 25, 1936.

*Barry, Wainwright, Thacher & Symmers* [*John C. Crawley* of counsel; *Archibald G. Thacher* with him on the brief], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Wendell P. Brown, Assistant Attorney-General*, of counsel], for the respondents.

BLISS, J. The State Tax Commission has assessed against the petitioner a tax on the excess of its gross premiums charged over the deductions allowed by law for business done within the State during the calendar year ending December 31, 1926. We are reviewing that assessment and a determination made after a hearing affirming such assessment. The petitioner is one of four insurance companies

incorporated under the laws of England and licensed to do a marine insurance business in the States of New York and New Jersey, of which Chubb & Sons, a partnership composed of citizens of New York and New Jersey, were the managers in the United States. Chubb & Sons were also the agents of the Federal Insurance Company, a New Jersey corporation admitted in New York, and of the Hartford Fire Insurance Company, a Connecticut corporation admitted in both New York and New Jersey. Each of these corporations wrote marine insurance policies in the State of New York. Under agreements made in the State of New Jersey on September 25, 1925, to which these companies were party, these companies severally agreed to reinsure one another with respect to certain percentages of specified marine and transportation risks that any of them might assume directly. The reinsurance policies for the insurance thus ceded by each of these companies to the other were executed in New Jersey by the manager of the New Jersey office of Chubb & Sons. Authority to issue the policies was communicated by the office manager and chief executive of the New York office of Chubb & Sons to the New Jersey office. Accounts of premiums due the various companies from each other for reinsurance thus ceded were kept by Chubb & Sons and credit balances were paid by check at the New Jersey office. The premiums which have been used to measure the additional tax assessed against the petitioner were received by it for business originally written in the State of New York by the Hartford and the Federal and reinsured in part by the petitioner. The policies of reinsurance ran to the benefit of the original insurer. The question thus presented was whether the premiums by which the additional tax has been measured were premiums charged for business done within the State of New York and whether the making of these contracts of reinsurance was the doing of business within that State.

Policies of insurance are local transactions and governed by local statutes. (*Paul* v. *Virginia*, 8 Wall. [U. S.] 168.) The original contract under which this reinsurance was carried out between the various companies here involved was not made in New York. The policies of reinsurance were not issued in New York, nor were the premiums paid in New York. The losses under these policies of reinsurance were payable to Chubb & Sons for the account of the original insurer. There is no privity of contract under the reinsurance between the original insured and the reinsurer. (*Morris & Co.* v. *Skandinavia Insurance Co.*, 279 U. S. 405.) A reinsurer is under no contract obligation to the original insured and is not

liable to him. (*Greenman* v. *General Reinsurance Corporation*, 237 App. Div. 648.) The contract for the ceding of these risks between the various companies became effective as soon as the original insurance was written in New York.

The petitioner here was not doing business within the State of New York when it contracted to issue and did issue these policies of reinsurance. The entire transaction of reinsurance was performed outside of New York State. The fact that the request for the issuance of such reinsurance came from New York State does not give that State jurisdiction. This question has been passed upon definitely by the Supreme Court of the United States in *Allgeyer* v. *Louisiana* (165 U. S. 578). In that case an open policy of marine insurance was made outside of the State of Louisiana. A communication was mailed from within the State of Louisiana to the insurance company at New York advising it that insurance was wanted on certain cotton which was, at the time of the communication, within the State of Louisiana. Premiums were remitted from New Orleans and both premiums and losses under the contract of insurance were payable in New York. The court held that the contract was made outside of the State of Louisiana, was a valid contract to be performed outside of that State, although the subject was property temporarily within the State, that the giving of the notice was a mere collateral matter and was not the contract itself but was an act performed pursuant to a valid contract which the State had no right or jurisdiction to prevent. The court also held that the insurance company had done no business of insurance within the State of Louisiana and had not subjected itself to the jurisdiction of that State.

The *Allgeyer* case was cited with approval and followed by the same court in *Compania General De Tabacos De Filipinas* v. *Collector of Internal Revenue* (275 U. S. 87). In that case the plaintiff, which was a Spanish corporation with its head office in Barcelona, procured insurance on tobacco then stored in the Philippines from two insurance companies, one of London and the other of Paris. Notice of the fact that this tobacco was thus stored and was being shipped from time to time was sent by the plaintiff's office in the Philippines to Barcelona and the head office thereupon procured the insurance. Payment of the premiums was made at Barcelona. The Collector of Internal Revenue, acting under authority of certain Philippine statutes, attempted to collect a tax on these premiums. The court held that the contract and the premiums paid under it were not under the jurisdiction of the government of the Philippine Islands and the effecting of this insurance was doing business outside of the Philippine Islands.

In *Stone* v. *Penn Yan, K. P. & B. Railway* (197 N. Y. 279) written applications for insurance policies were mailed from within New York State to an insurance company at its office in Philadelphia. The policies were issued in Pennsylvania and mailed to New York. Our Court of Appeals held that the contracts of insurance were made in Pennsylvania, " for it was there that the applications were received and acted upon."

In the case of *Huntington* v. *Sheehan* (206 N. Y. 486) the defendants sent a letter from within New York to a Massachusetts insurance company at its Massachusetts office asking that an insurance policy on defendants' property then in New York be renewed. Such renewal policy was issued in Massachusetts and mailed from there to the defendants in New York. The Court of Appeals held that this resulted, not in the transaction of business in New York, but in the consummation in Massachusetts of a contract which was lawful in New York.

In *People ex rel. Kirkman* v. *Van Amringe* (266 N. Y. 277) the Court of Appeals stated: " It is settled law that a State cannot forbid contracts of insurance relating to risks within its limits from being made between a citizen and a corporation in another State." A foreign insurance company had issued in the city of Washington a policy of group insurance covering the members of an unincorporated association located in the city of New York. A written application had been made by the association and presumably transmitted from New York to Washington. The premiums were sent by the financial secretary of the association by mail from New York to Washington. The Court of Appeals held that this was not doing business in New York.

The respondent here relies strongly upon the authority of *Palmetto Fire Insurance Co.* v. *Conn* (272 U. S. 295) to sustain its right of taxation. The Palmetto Fire Insurance Company was a South Carolina corporation which made a contract in Michigan with the Chrysler Sales Corporation, a Michigan corporation, to insure all automobiles wherever purchased of the Chrysler Sales Corporation. Reports of such purchases were sent by the Chrysler Sales Corporation from Michigan to the insurance company in South Carolina. The premiums were payable in Michigan. Any purchaser of a car got the insurance as a part of his bargain whether he wished it or not, and a certificate was sent to him by the plaintiff. A car was purchased in Ohio and that State, through its Superintendent of Insurance, sought to revoke the license of the plaintiff to do business in Ohio on the ground that it had violated Ohio statutes in thus insuring property located within the State of Ohio without the insurance being issued by a legally authorized

agent resident in Ohio. The question upon which the decision turned was whether the transaction brought the plaintiff within the taxing power of Ohio. The United States Supreme Court held that the plaintiff was doing business within the State of Ohio, saying: " Manifestly there was nothing in the contract between the plaintiff and the Chrysler Sales Corporation, without more, that Ohio could lay hold of, even if it insured property in Ohio. But the contract contemplated and provided for a benefit to third persons if, when, and where they complied with its conditions. When a man bought a car in Ohio, by that act he made effective the agreement of the company to insure future purchasers, and imposed upon it an obligation that did not exist before. It is true that the obligation arose from a contract made under the law of another State, but the act was done in Ohio and the capacity to do it came from the law of Ohio, so that the co-operation of that law was necessary to the obligation imposed. It would be held in some jurisdictions that the purchaser became party to a contract with the insurance company. By universal consent he at least would become the beneficiary of a contract for his benefit. Whatever technical form may be given to the reasoning, the substance is that by acts done in Ohio the purchaser obtains for himself the advantage of insurance that before that moment did not exist. It does not matter whether his getting it was a large or an inconspicuous feature of his bargain. It was part of it in any event, and we cannot doubt that the lower court was right in holding that in such circumstances the State could insist upon its right to tax. It would be extravagant to say that the State's general power to deny to the plaintiff the right to enter or remain within it for business unless it paid for these transactions as a part of the price, must be denied upon constitutional grounds." The analogy of this latter case with the one at bar is not complete. When the purchaser bought the car in Ohio he made effective the contract, to which the plaintiff was a party, to insure property in Ohio. This insurance was included in and became a part of the contract for the purchase of the automobile which latter contract of purchase was made in Ohio. In our case the reinsurance contract did not form any part of a contract made within New York and did not inure to the benefit of the owner of the property originally insured. The first sentence of the above quoted portion of the opinion in the *Palmetto* case clearly states the rule which is to be followed here. To repeat, the court there said that there was nothing in the contract between the plaintiff and the Chrysler Sales Corporation, without more, that Ohio could lay hold of, even if it insured property in Ohio. The deciding fact in that case

was that the contract between the Palmetto Company and the Chrysler Sales Corporation provided a benefit for the purchaser of the car, which contract of purchase was made in Ohio.

We find nothing in the transactions here involved by which it can be held that the petitioner was doing business within the State of New York in so far as the issuance of these policies of reinsurance was concerned.

The determination should be annulled, with fifty dollars costs and disbursements.

HILL, P. J., and McNAMEE, J., concur; RHODES, J., dissents, and votes to confirm, with a memorandum, in which CRAPSER, J., concurs.

RHODES, J. (dissenting). By virtue of the previous mutual agreement of all the companies interested, when the original policies involved herein were issued, *eo instanti*, the reinsurance in question came into being, and became then operative and in effect. The act of insurance was the act which brought reinsurance into existence and gave it force and validity. As the original insurance was issued in New York, so the reinsurance thereby begotten also had its inception at the same time and place.

CRAPSER, J., concurs.

Determination annulled, with fifty dollars costs and disbursements.