Heffernan, J.
Petitioner is now and at all times referred to herein has been a domestic life insurance corporation with its principal office in the city of New York.
In addition to its insurance business transacted in this State petitioner was during the calendar year of 1939, authorized to conduct its business in the District of Columbia and in all the sister States of the country with fifteen exceptions. It was never authorized to carry on a life insurance business in four of the States and had previously withdrawn from doing business in eleven others. The company paid a corporate franchise tax for the privilege of conducting its business in every State in which it legally operated based on premiums received on policies on the lives of residents thereof, except Massachusetts where it paid an excise tax based on net reserves on policies on the lives of residents.
In no State where petitioner was not authorized to transact • business did it pay a tax on or in any way related to premiums received by it on policies on the lives of persons resident in those States. It has, however, in force policies of insurance on the lives of residents in every one of those States where it has no authority to do business.
*90 Section 187 of the Tax Law, prior to 1937 (L. 1935, ch. 38), imposed upon insurance companies, both domestic and foreign, a privilege or franchise tax measured by a percentage of the premiums “ for business done ” in this State. Deduction was allowed for reinsurance premiums paid to corporations taxed under the statute. This was repealed by chapter 530 of the Laws of 1937, and a new section 187 was enacted. The new statute adopted as a basic tax measure premiums “ on risks * * * resident in this state ”.
Subdivisions 1, 3 and 4 of section 187, applicable to domestic insurers and certain foreign insurers (other than life insurance companies), impose a tax on “ direct premiums * * * on risks located or resident in this state ”.
Subdivision 2, applicable to domestic and foreign life insurance companies, imposes a tax on “ direct premiums * * * on risks resident in this state
This controversy involves the correct interpretation of subdivision 5 which was the subject of the 1937 amendment, more particularly however the clause which provides that “ In ascertaining the amount of direct premiums upon which tax is payable * # * there shall be first determined the amount of total gross premiums * * * on property or risks located or resident in this state, including premiums for reinsurance assumed, and also including premiums written, procured or received in this state on business which cannot specifically be' allocated or apportioned and reported as taxable premiums on business of any other state or states ”.
The amendment of 1937 likewise made a change in the treatment of reinsurance premiums for tax purposes. The former statute used the “ net retained ” basis. A company was required to report premiums both for direct insurance and for reinsurance charged for “ business done in this state ” but could deduct any reinsurance premium “ paid ” to corporations taxed under the statute. The tax was thus designed to fall on the reinsurance premiums in the hands of the assuming company, and the direct writer bore the tax only on the amount of the direct premium not used for reinsuring its own risks plus premiums received by it for reinsurance of others. Only where the reinsurance was ceded to a company not subject to tax in New York was there no deduction, in which case the direct premium bore the full tax.
This change in the law resulted by reason of our decision in People ex rel. Sea Ins. Co. v. Graves (248 App. Div. 255, affd. 274 N. Y. 312).
*91 The new enactment requires both direct and reinsurance premiums but permits deduction of “ Such premiums * * * which have been received by way of reinsurances ” from reinsurers authorized to transact business in this State. (§ 187, subd. 5, par. [a].) The general effect of such a deduction is to throw the whole burden of the tax on the direct writing company and to leave reinsurance premiums tax free except where they are received from companies not authorized to transact business in New York, which are thus free from any New York tax on the direct business.
Reinsurance premiums are those paid by one insurance company to another. Each company has a certain limit which represents the largest amount of insurance it is willing to carry on an individual life. Where the original writing company issues an amount in excess of such maximum, such excess is reinsured or transferred for all practical purposes to another company and the premiums on the portion of the risk which is transferred to the other company will be paid by the original writing company to the reinsuring company.
Petitioner’s contention, in effect, is that premiums collected and receipted for by it outside of the State of New York do not constitute “ premiums received in this state ” under the statute and that this law does not impose a tax on premiums for reinsurance assumed with respect to nonresident risks.
The respondents, bn the other hand, assert that the basic tax measure of premiums on resident risks adopted in the 1937 amendment is a valid method of measuring a tax on the privilege granted by the State in the case of companies authorized to do business within its borders. It urges, however, that the adoption of this tax base as to such risks would provide an opportunity for tax evasion by any State on a large volume of premium income from nonresident risks if provision were not made to include it.
It is conceded that during the calendar year 1939, petitioner collected $229,977.68 as gross direct premiums, less return premiums and dividends, which it did not report as taxable to any other State. Of this sum $46,957.78 constituted premiums collected in this State — and petitioner concedes that it is taxable with respect thereto — and the balance of $183,019.90 represented premiums collected outside of the State. Of the latter amount $7,120.61 constituted premiums on policies written or procured in this State but collected at petitioner’s agencies outside of the State, and the balance of $175,899.29 relates to prem *92 iums on policies written or procured in States other than our own. The latter item represents the amount in dispute.
It is undisputed that the questioned balance of $175,899.29 was collected by petitioner as premium income from policies on the lives of persons residing in States or countries where it had no authorization to do business and which was not allocated or reported as taxable income under the franchise privilege granted by any other State.
Petitioner argues that these premiums were not “ written, procured or received in this state ” because they were paid at a local agency of petitioner outside of this State, and deposited by such agency in a bank in the name of petitioner located in the place where the collection agency was located. Petitioner does not maintain branch offices but does have agencies in every State where it is authorized to act, except Connecticut and Kansas. These agents may receive applications for insurance but may not approve contracts. The home office in New York determines whether an application shall be accepted or rejected. Premiums may be paid by the insured at the home office or at a local agency. Policyholders residing in States where petitioner is not authorized to do business may pay premiums either directly to the home office or through a local agency in a State near the policyholder’s residence.
The premiums in question are deposited by the agent of petitioner in a bank account in petitioner’s name in the city where the agency is located. Funds in such accounts are subject to withdrawal only by petitioner. From time to time petitioner draws checks on the funds in such bank accounts and thereby brings the proceeds into this State.
During 1939 petitioner received $3,373.06 as premiums for reinsurance with respect to risks resident in this State. It reported that fact in its quarterly reports and paid the tax due thereon. During the same period it received $8,395.07 for reinsurance assumed with respect to nonresident risks. It made no report of the latter item to this State or to any other State.
Respondents determined that these various sums aggregating $11,768.13 must be reported in gross premiums to this State, but allowed as a deduction all such premiums received from authorized New York companies, totalling $7,173.33 thus leaving $4,594.80 of reinsurance premiums assumed from unauthorized New York companies subject to tax.
The direct premiums here involved in the sum of $175,899.29 were received by petitioner, so it alleges, on policies written or procured outside this State. Such premiums were collected *93 and receipted for by agents of petitioner outside of our State and deposited in petitioner’s bank accounts beyond our borders. It is admitted that this sum is not subject to taxation by any other State and that it is finally brought into this State.
It is argued by petitioner that since these premiums were received outside of the State of New York they are not taxable under the statute.
It seems to us that this argument is fallacious. The premium income is received by reason of the fact that petitioner has a franchise from this State to transact the business of life insurance. Petitioner has never been authorized to transact business in four of the States from which it obtains the premiums here involved and has abandoned its previous right in eleven others. As to these latter it is settled that it is not transacting business therein by continuing to receive premiums on the lives of residents, and that fact would not confer jurisdiction on such States to tax should they seek to assert it (Providence Sav. Assn. v. Kentucky, 239 U. S. 103). The mere fact that an insured may pay his premiums to one of petitioner’s agents in some authorized State is of no significance. He may, at his option, pay the premium directly at petitioner’s home office. The respondents based their determination on a finding that the direct premiums in issue were u written, procured or received in this state ”. At all times petitioner has complete control of the premiums deposited by its agents in banks where the agency is located. Ultimately all these premiums are brought into the home office.
Where a premium collected in another State is properly allocable as taxable business of that State, the New York tax is not applicable by its terms despite the fact that the proceeds ultimately come into petitioner’s possession in this State, We are concerned here only with premiums remitted through other States on risks resident in unauthorized States. Such premiums are not collected in the course of any business transacted outside of New York and taxable elsewhere. Where a premium is not reported as taxable in any State and is actually received by petitioner in New York by whatever intervening process of transmittal it follows that it must be deemed to be ‘1 received ’ ’ here within the intent and meaning of the statute.
It is undisputed that all reinsurance premiums paid to petitioner herein are “ written, procured or received in this state ” and that none of it is reported as taxable to any other State. Petitioner asserts that it is not obligated to report any such *94 premiums where they cover a direct risk of another company on the life of a nonresident and that the requirement to report premiums for “ reinsurance assumed ” applies only to those covering another company’s risk on a resident of New York, and that such premiums are not encompassed within the requirement that all11 premiums ” not allocated as taxable to another State be reported.
In our opinion the statute is not susceptible of the construction which petitioner attributes to it. The risk under a reinsurance contract is not the life of the person insured by the direct writer with whom the reinsurer has no relation whatever. It is the liability to the direct writer, which is located where the contract is made and to be performed, which constitutes the risk. The business is done where the reinsurance agreement is entered into and is to be carried out. Then, too, the inclusion clause is not limited in terms to direct premiums but covers all premiums, including those received for reinsurance. It follows therefore, that only premiums allocated as taxable reinsurance premiums to another State need not be reported. Consequently reinsurance premiums from companies not authorized to do business here, and, thus, not subject to New York tax on their direct business, will be subject to tax when received in this State by an authorized New York company.
The determination of respondents should be confirmed, with $50 costs and disbursements.
Foster, P. J., Brewster, Deyo and Santry, JJ., concur.
Determination of the respondents confirmed, with $50 costs and disbursements. [See post, p. 933.]